IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:21-CV-530-FL

| | |
|---|---|
| FIRST RECOVERY, LLC and DYLAN BROOKS,  )<br>)<br>Appellants,  )<br>)<br>v.  )<br>)<br>KEITH SANDERS,  )<br>)<br>Appellee.  ) | ORDER |

This matter is before the court on appeal of a final order of the United States Bankruptcy Court for the Eastern District of North Carolina granting judgment on partial findings in favor of appellee in adversary proceeding captioned <u>First Recovery, LLC and Brooks v. Sanders</u>, 20-00018-5-SWH (Dec. 17, 2021). The issues raised have been briefed fully, and in this posture are ripe for ruling. For the reasons that follow, the court vacates the bankruptcy court's findings and judgment and remands the case for new trial.

### BACKGROUND

Appellee filed a chapter 7 case in the United States Bankruptcy Court for the Eastern District of North Carolina August 9, 2019. <u>In re Sanders</u>, Case No. 19-03665-5-SWH. Appellants initiated an adversary proceeding in response on January 1, 2020, seeking a determination that appellee owed to them a debt of $1,300,000.00, the amount appellants paid to purchase a business from appellee. According to appellants, appellee made the sale by engaging in fraud, thus rendering the debt non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (B).

An intermittent trial was convened August 17, 2021, with hearings spanning four days over the course of three months, ultimately concluding October 20, 2021. Testimony established that appellant Dylan Brooks ("Brooks") purchased a repossession business called Unlimited Recovery Repossession Division, LLC ("URRD" or alternatively "the company") from appellee for $1,300,000.00. Witnesses testified that over the course of the sale, appellee made numerous misrepresentations, including with respect to the profitability of URRD and appellee's capacity to assign essential URRD assets, particularly its allied bond, client contracts, and lot leases. (See, e.g., Aug. 17, 2021, Trans. (DE 16) at 97; Oct. 20, 2021, Trans. (DE 19) at 11-12, 15, 70-71).

There also was evidence presented that appellee personally and through his attorney misrepresented a failed purchase of URRD three years prior by Linda and Jordan Craft ("the Crafts"), explaining that the failure was attributable entirely to the Crafts, who had "run [URRD] into the ground," and appellee repurchased the business out of "goodness and kindheartedness." (Aug. 17, 2021, Trans. (DE 16) at 13-19; see Aug. 18, 2021, Trans. (DE 17) at 42, 58; Pl. Ex. 14 (DE10-7)). Appellee allegedly omitted mention of a lawsuit the Crafts brought against him stemming from the sale, wherein the Crafts asserted fraud related to URRD's revenue and the lack of assignability of the allied bond and client contracts, and also failed to mention the terms of appellee's repurchase. (See Aug. 17, 2021, Trans. (DE 16) at 5-17); URR of North Carolina, Inc. et al v. Unlimited Recovery Repossession Division, LLC, et al, 11 CVS 7523 (Wake County).

At the close of plaintiff's evidence, appellee moved for judgment on partial findings pursuant to Bankruptcy Rule 7052, arguing that appellants had not presented a prima facia case as to all elements of non-dischargeability pursuant to either 11 U.S.C. §§ 523(a)(2)(A) or (B). The bankruptcy court granted the motion, concluding under both that plaintiff failed to establish

reasonable or justifiable reliance, and appellants appealed. At the close of briefing, this court heard argument on the appeal October 19, 2022, at New Bern.

**COURT'S DISCUSSION**

A.   Standard of Review

This court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a) to review the bankruptcy court's orders. "An appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts." 28 U.S.C. § 158(c)(2). "On an appeal the district court . . . may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings." Harman v. Levin, 772 F.2d 1150, 1153 n.3 (4th Cir. 1985).[1] "Legal conclusions are reviewed de novo, but findings of fact will only be set aside if clearly erroneous." Schlossberg v. Barney, 380 F.3d 174, 178 (4th Cir. 2004). A finding of fact is clearly erroneous, although there is evidence to support it, when the reviewing court, after carefully examining all the evidence, is "left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985).

> If the [lower court's] account of the evidence is plausible in light of the record viewed in its entirety, the [appellate court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

Id. at 573-74.

B.   Analysis

"The provisions for discharge of a bankrupt's debts, 11 U.S.C. §§ 727, 1141, 1228, and 1328(b), are subject to exception under 11 U.S.C. § 523(a), which carries 16 subsections setting

---

[1]   Internal citations and quotation marks are omitted from all citations unless otherwise specified.

out categories of nondischargeable debts." Field v. Mans, 516 U.S. 59, 64 (1995). "Two of these are debts traceable to falsity or fraud or to a materially false financial statement, as set out in § 523(a)(2)." Id. "Subparagraph (A) bars discharge of debts arising from 'false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition.'" Lamar, Archer & Cofrin, LLP v. Appling, 138 S. Ct. 1752, 1758 (2018) (quoting 11 U.S.C. § 523(a)(2)(A) (hereinafter "subparagraph (A)"). "Subparagraph (B), in turn, bars discharge of debts arising from a materially false 'statement . . . respecting the debtor's . . . financial condition' if that statement is 'in writing.'" Id. at 1758-59 (quoting 11 U.S.C. § 523(a)(2)(B) (hereinafter "subparagraph (B)"). Significant here, whereas subparagraph (B) expressly requires reasonable reliance by a creditor on a false representation, under subparagraph (A) courts apply the less-demanding justifiable reliance standard. Field, 516 U.S. at 68. With respect to both subparagraphs, a creditor must establish the exception to discharge by a preponderance of the evidence. Farouki v. Emirates Bank Int'l, Ltd., 14 F.3d 244, 249 (4th Cir. 1994).

Appellants contend that the bankruptcy court improperly considered representations regarding assignability of the bond, client contracts, and leases, as well as representations and omissions regarding the Crafts, under subparagraph (B), rather than subparagraph (A), and thus erroneously applied the more stringent reasonable reliance standard. Appellants additionally contend that under both subparagraphs (A) and (B) the bankruptcy court applied an overly demanding standard of reliance. The court agrees the assignability representations should have been analyzed under (A) and concludes the bankruptcy court failed to adequately explain its reliance findings under subparagraphs (A) and (B) for the purpose of review.

1.      Application of Subparagraph (A) or (B)

The bankruptcy court determined that representations regarding assignability of the bond, client contracts, and leases, as well as representations and omissions regarding the Crafts, were "statements respecting the debtor's . . . financial condition," and therefore appropriately were analyzed under subparagraph (B). 11 U.S.C. § 523(a)(2)(B).[2]  Appellants contend these representations are not, under established case law, "statements respecting the debtor's . . . financial condition." Id.  The issue on appeal is thus the meaning of this statutory phrase.

Analyzing the same phrase, the United States Supreme Court in Appling held that "respecting" means "concerning" and "financial condition" means "one's overall financial status." 138 S. Ct. at 1759.  In effect,

> a statement is "respecting" a debtor's financial condition if it has a direct relation to or impact on the debtor's overall financial status. A single asset has a direct relation to and impact on aggregate financial condition, so a statement about a single asset bears on a debtor's overall financial condition and can help indicate whether a debtor is solvent or insolvent, able to repay a given debt or not.

Id. at 1761.  Relying upon this holding, the bankruptcy court determined:

> The assignability of the bonds, client contracts and leases (collectively, the "assignability representations") affects the value and character of the assets of the debtor and therefore representations made with regard to those assets are made with respect to the debtor's financial condition.

(Bankr. Order (DE 1-1) at 4).  Beyond that excerpted, the bankruptcy court did not explain how the assignability of the bonds, client contracts, and leases affects their overall "value and character."

---

[2]   In this order, as a shorthand adopted for convenience and readability purposes, the court will refer to statements respecting the appellee's financial position without also referencing his former company, URRD, as an insider.  Appellants expressly acknowledged that the company formerly owned by the debtor constitutes an insider for purposes of 11 U.S.C. § 523(a)(2).

5

On review, the bankruptcy court's reading of Appling is more expansive than the Supreme Court's holding warrants. The Supreme Court in Appling faced the discrete question of whether statements about a single asset can be "statements respecting the debtor's . . . financial condition," properly analyzed under subparagraph (B). Appling, 138 S. Ct. at 1758. The Court answered in the affirmative, resolving a circuit split, and rejecting a narrower interpretation that would have cabined the phrase to statements making reference to the debtor's overall financial state or well-being. Id. at 1759. "Under that [narrower] formulation, a formal financial statement providing a detailed accounting of one's assets and liabilities would qualify, as would statements like 'Don't worry, I am above water,' and 'I am in good financial shape.'" Id. "A statement about a single asset would not." Id.

It does not follow from the Supreme Court's holding that every statement about the value and character of a single asset is made "respecting the debtor's or an insider's financial condition," as the bankruptcy court's analysis suggests. 11 U.S.C. § 523(a)(2)(B). Rather, a discernable limiting principle from Appling is that the statement must "ha[ve] a direct relation to and impact on [the debtor's] aggregate financial condition" such that it "can help indicate whether a debtor is solvent or insolvent, able to repay a given debt or not." Appling, 138 S. Ct. at 1761. For instance, the Supreme Court in Appling affirmed the lower court's holding that the debtor's statement to his lawyer "that he was expecting a tax refund of 'approximately $100,000,' enough to cover his owed and future legal fees," was a statement respecting his financial condition and properly evaluated under subparagraph (B). Id.

Applying that limiting principle to appellee's alleged statement regarding the assignability of assets, the Fourth Circuit's opinion in In re Biondo, 180 F.3d 126 (4th Cir. 1999) instructive.[3] There, the debtors owed a law firm substantial attorney's fees due in the course of the firm's representation of them in litigation. Id. at 129. The parties eventually entered into a settlement agreement, where the law firm accepted payment of a reduced fee in return for, in part, assignment by the debtors of all distributions from two real estate partnerships. Id. Unbeknownst to the law firm creditor, the debtors had previously transferred their interests in the partnerships to another limited partnership created by them during the pendency of the litigation. Id. Thus, at the time the debtors entered into the settlement agreement, contrary to their representations, the debtors in fact had no interest in the partnerships to transfer.

As here, the debtors in Biondo misrepresented their capacity to assign an asset. Id. at 130. The bankruptcy and district court both held that the debtors' debt to the law firm was excepted from discharge under subparagraph (A). Id. (citing 11 U.S.C.A. § 523(a)(2)(A)). "Specifically, the bankruptcy court found that the [debtors] knowingly and falsely represented that they maintained and could transfer interests in the Partnerships when, in fact, those interests already had been placed into [a limited partnership of their creation]." Id. The Fourth Circuit affirmed.

Consistent with Biondo, appellee's statements about the assignability of the bond, client contracts, and leases also are properly analyzed under subparagraph (A). Though the issue of whether the court should instead have analyzed discharge under subparagraph (B) was not raised in Biondo, and so it was not directly addressed, this court finds the outcome congruous with the limiting principle identifiable in Appling. Namely, unlike the debtor's misrepresentation that he

---

[3] Though decided prior to Appling, the Fourth Circuit was among those to hold that a statement regarding a single asset of the debtor can be a statement respecting his financial condition. See Engler v. Van Steinberg, 744 F.2d 1060, 1061 (4th Cir. 1984). In re Biondo thus is consistent with Appling and remains good law.

7

would use a tax refund to pay a debt in Appling, the debtor's statements here that URRD's bond, client contracts, and leases were assignable to appellants as purchasers did not have a "direct relation to . . . [the debtor's] aggregate financial condition," and particularly whether he was "solvent or insolvent, able to repay a given debt or not." Appling, 138 S. Ct. at 1761 (emphasis added). That remains true even where the assignability of the asset was a "material inducement" to the contract of purchase. Biondo, 180 F.3d at 130.

Turning, then, to representations regarding the prior purchasers, the Crafts, including that they had "run the business into the ground" and "failed to obtain the bond and defaulted on loan," such statements also do not bear directly on the debtor's solvency three years later. See Appling, 138 S. Ct. at 1761. Accordingly, those misrepresentations also were not made "respecting the debtor's or an insider's financial condition," and properly are considered under subparagraph (A). See 11 U.S.C.A. § 523(a)(2)(A).

In sum, the bankruptcy court improperly considered representations regarding the assignability of the bond, client contracts, and leases, as well as representations and omissions regarding the Crafts, under subparagraph (B), rather than subparagraph (A), and thus erroneously applied the more stringent reasonable reliance standard to the determination of discharge under 11 U.S.C. § 523(a).

    2.    The Bankruptcy Court's Findings Under Subparagraphs (A) and (B)

Pursuant to the foregoing, the following representations by appellee as enumerated in the bankruptcy court's order properly are analyzed under subparagraph (A):

1. Representations regarding the assignability of the bond;
2. Representations regarding the assignability of the client contracts;
3. Representations regarding the assignability of the leases;
4. Representations regarding the experience of the drivers;
5. Representations regarding the hours needed to oversee the Company's operations;

8

      6. Representations and omissions regarding the prior purchasers, Jordan and Linda Craft;

      7. Representations regarding condition of the vehicles and debtor's credentials to inspect them.

Appellants do not challenge the bankruptcy court's consideration of all other alleged misrepresentations, including those made with respect to the company's revenues, and representations contained in the business summary report, under subparagraph (B), as statements made "respecting the debtor's . . . financial condition," and the court assumes without deciding the same.

      Appellants' proof of actual fraud under subparagraph (A) requires satisfaction of the elements of common law fraud: "(1) false representation, (2) knowledge that the representation was false, (3) intent to deceive, (4) justifiable reliance on the representation, and (5) proximate cause of damages." Roundtree v. Nunnery, 478 F.3d 215, 218 (4th Cir. 2007). To establish nondischargeability under subparagraph (B) appellants must prove: (1) that the debtor obtained money, (2) by use of a statement in writing, (3) with that statement being materially false, (4) with respect to the debtor's or an insider's financial condition, (5) upon which plaintiff reasonably relied, and, (6) that the debtor caused the materially false financial statement to be published with the intention to deceive. 11 U.S.C.A. § 523(a)(2)(B); see In re Sharp, 340 F. App'x 899, 901 (4th Cir. 2009). The bankruptcy court's dismissal under both subparagraphs rested upon the reliance element, which in turn is a factual issue that cannot be set aside on appeal unless clearly erroneous. See Schlossberg, 380 F.3d at 178; Sharp, 340 F. App'x at 906 ("[B]oth of the reliance elements are factual issues.").

      Appellants contend the bankruptcy court applied heightened standards of reliance. The court considers these arguments under both subparagraphs respectively.

      a.     Justifiable Reliance under Subparagraph (A)

9

As noted above, whereas subparagraph (B) requires "reasonable reliance," subparagraph (A) requires "justifiable reliance." Field, 516 U.S. at 68. In contrast to reasonable reliance, a creditor's reliance on a misrepresentation may be justifiable even if his conduct does not "conform to the standard of the reasonable man." Id. at 70-71. "Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." Id. at 71.

The Fourth Circuit has described justifiable reliance as presenting a "minimal threshold," which typically does not give rise to a duty to investigate:

> [T]he illustration is given of a seller of land who says it is free of encumbrances; according to the Restatement, a buyer's reliance on this factual representation is justifiable, even if he could have "walk[ed] across the street to the office of the register of deeds in the courthouse" and easily have learned of an unsatisfied mortgage.

Biondo, 180 F.3d at 135 (quoting id. at 70 ("[A] person is justified in relying on a representation of fact although he might have ascertained the falsity of the representation had he made an investigation.")); see Sharp, 340 F. App'x at 906-07.

"Justifiability is not without some limits, however." Field, 516 U.S. at 71. "A person is required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." Id.

> Thus, if one induces another to buy a horse by representing it to be sound, the purchaser cannot recover even though the horse has but one eye, if the horse is shown to the purchaser before he buys it and the slightest inspection would have disclosed the defect. On the other hand, the rule stated in this Section applies only when the recipient of the misrepresentation is capable of appreciating its falsity at the time by the use of his senses. Thus a defect that any experienced horseman would at once recognize at first glance may not be patent to a person who has had no experience with horses."

> A missing eye in a "sound" horse is one thing; long teeth in a "young" one, perhaps, another.

Id. In short, "a duty to investigate can arise when the surrounding circumstances give rise to red flags that merit further investigation." Sharp, 340 F. App'x at 907. "[W]hen the circumstances are such that they should warn a creditor that he is being deceived, he cannot justifiably rely on the fraudulent statements without further investigation." Id.

When considering the qualities of appellant Brooks for the purpose of determining whether his reliance on the debtor's alleged misrepresentations was justifiable, the bankruptcy court placed particular emphasis on appellant Brooks's status as a graduate of the Wharton School of the University of Pennsylvania and his experience buying businesses. The court explained that despite this background, and "[w]ithout previous business or social dealings with the debtor," Brooks:

> relied upon the debtor's representation that the debtor was qualified to inspect the vehicles; plaintiff had access to office staff <u>yet did not verify the hours that the debtor spent in the office</u>; plaintiff had access to the drivers <u>yet did not check on their experience or seek documentation regarding their driving records</u>. The business he was purchasing depended upon the mechanical status of the trucks and experience of the drivers, <u>yet this sophisticated and experienced purchaser of businesses did not choose to hire an independent mechanic to assess the status of the trucks</u>. Furthermore, plaintiff had actual knowledge that the Crafts had previously purchased the business from the debtor and that the debtor had repurchased it from them, <u>yet plaintiff did not contact them to investigate the circumstances of that transaction</u>.

(Bankr. Order (DE 1-1) at 7 (emphasis added)).

The bankruptcy court thus imposed upon appellants a duty to investigate. With reference to appellant Brooks's education and experience, the bankruptcy court also reasoned that "[r]ed flags abounded in th[e] transaction, with the most vivid being:"

1. Plaintiff had no previous dealings or other familiarity with the debtor;
2. Previous recent failed sale transaction;
3. Denial of access to operating records; and
4. Self-serving statements of the previously unknown seller as to the seller's ability to certify conditions of the vehicles and to make representations as to the hours necessary to run the business.

11

(Id.).

Considering these "red flags" in turn, a lack of previous dealings or familiarity with the debtor alone cannot be said to impose a duty to investigate. To hold otherwise would trigger a duty to investigate in an overwhelming number of cases, subverting the principle that the justifiable reliance element generally does not give rise to a duty to investigate. See Sharp, 340 F. App'x at 906-07.

With respect to previous recent failed sales transaction with the Crafts, the record includes evidence that the debtor represented to appellants "that [URRD] had been purchased by an individual who proceeded to run it into the ground and [the debtor], out of his concern for the business and its employees, had come in to repurchase the business . . . essentially out of this goodness and kindheartedness." (Aug. 17, 2021, Trans. (DE 16) at 13-19). When Brooks's closing attorney inquired further about the previous purchaser by email, the debtor's attorney replied that the purchasers "couldn't get the required bond, so they defaulted on their loan and their bank took the business. Then [the debtor] bought it back from the bank." (Pl. Ex. 14 (DE 10-7); Aug. 18, 2021, Trans. (DE 17) at 58). No mention of the Crafts's lawsuit asserting claims of fraud was made.

A debtor who is guilty of conscious misrepresentation cannot offer as a defense under subparagraph (A) the creditor's failure to make an investigation to verify the same. Field, 516 U.S. at 72. Rather, a creditor, even a sophisticated one with the means to confirm the validity of a debtor's representation, is entitled to rely upon representations by the debtor in the absence of red flags. See id. at 71. The debtor's own representations, even if self-serving, are not necessarily red flags in and of themselves. Indeed, the Fourth Circuit in Biondo, faced with the contention that the law firm creditor, a "sophisticated entity," could have checked the financial statements to

12

confirm the debtors' assertions that they maintained an interest in the partnership, described such argument as "expressly rejected by the Supreme Court" in Field. Biondo, 180 F.3d at 135. The Fourth Circuit analogized to the illustration of a seller of land who says it is free of encumbrances, excerpted above from Field, and concluded that just as the buyer of the land was not required to walk across the street to the office of the register of deeds, it was "clear that [the law firm] was not required to inspect the Partnerships' financial statements and was instead justified in relying upon the [debtors'] representations that they owned the interests in the Partnerships and could assign them." Id. Similarly, where the debtor assured appellants that the failure of the prior sale was attributable solely to the Crafts, appellants were not required to verify the same, without more. On this same basis, the court rejects also the characterization of self-serving statements regarding the debtor's ability to certify conditions of the vehicles and to the hours necessary to run the business as themselves red flags.

Finally, the bankruptcy court cited appellant's denial of access to operating records as a red flag. The bankruptcy court, however, does not specify to what operating records appellants were denied access, and on review of the record, the court cannot identify the records to which the bankruptcy court refers.

The court accordingly vacates that part of the bankruptcy court's order finding a lack of a justifiable reliance, for those misrepresentations arising under subparagraph (A), and on remand directs the bankruptcy court to bear in mind that "[i]t is only where, under the circumstances, the facts should be apparent to one of his knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own." Field, 516 U.S. at 71. Given that the bankruptcy court did not make findings as to justifiable reliance on the basis of the correct standard, remand to the

bankruptcy court to make new findings in the first instance is warranted. See In re Cohn, 54 F.3d 1108, 1118 (3d Cir. 1995) ("[W]here sufficient facts have not been developed by that court, the proper response is to remand.").

      b.      Reasonable Reliance

The reasonable reliance assessment required by subparagraph (B) requires the court to "objectively assess the circumstances to determine whether the creditor exercised 'that degree of care which would be exercised by a reasonably cautious person in the same business transaction under similar circumstances.'" Sharp, 340 F. App'x at 908 (quoting Ins. Co. of N. Am. v. Cohn, 54 F.3d 1108, 1117 (3d Cir.1995)).

The bankruptcy court here concluded that it was "patently unreasonable" for appellants to purchase a "$1.3 million dollar business without doing the following:"

1. Reviewing the bank accounts to ascertain information about revenues, loans, payroll, and changes in revenue trends, even though he testified that the review of bank accounts is an essential component of due diligence;
2. Contacting the major clients to confirm revenue probabilities and stability;
3. Sitting down with employees of the company to review employment records, salary levels, expertise and experience of drivers; and management hour requirements;
4. Employing professionals to value and inspect the condition of vehicles;
5. Contacting the bond issuer, lease parties, and clients to determine relationship status and assignability; and
6. Contacting the Crafts to determine their experience with owning the Company and the circumstances of the repurchase.

(Bankr. Order (DE 1-1) at 11). The bankruptcy court did not provide a basis for its finding that purchasing a repossession business without specifically engaging in the listed conduct was unreasonable, nor did it explain why the due diligence appellants did engage in was inadequate. Where reasonable reliance requires consideration of a "reasonably cautious person in the same business transaction under similar circumstances," the bankruptcy court's failure to provide a basis for requiring the factors enumerated in the purchase of a repossession business was clear error.

14

Sharp, 340 F. App'x at 908 (emphasis added).  For instance, in Cohn the United States Court of Appeals for the Third Circuit considered reasonable reliance in the context of an investor bond application, determining that courts are required to consider:

> (1) the creditor's standard practices in evaluating credit-worthiness (absent other factors, there is reasonable reliance where the creditor follows its normal business practices); (2) the standards or customs of the creditor's industry in evaluating credit-worthiness (what is considered a commercially reasonable investigation of the information supplied by debtor); and (3) the surrounding circumstances existing at the time of the debtor's application for credit[.]

In re Cohn, 54 F.3d 1108, 1117 (3d Cir. 1995); see also In re Sapp, 364 B.R. 618, 628 (Bankr. N.D.W. Va. 2007) (considering the same); In re Turner, 358 B.R. 422, 426 (Bankr. N.D. Okla. 2006) (same); In re Johnson, 242 B.R. 283, 292 (Bankr. E.D. Pa. 1999) (same).  With respect to the third factor, the court in Sharp assessed whether "red flags" were raised.  340 F. App'x at 908.

In sum, the court vacates the bankruptcy court's finding of a lack of reasonable reliance and remands for additional fact finding.  Accordingly, remand is necessary for reliance determinations under both subparagraphs (A) and (B).

3.    Proceedings on Remand

The bankruptcy court's order rested almost exclusively upon the reliance element under both subparagraphs, and thus the court largely did not make findings regarding the remaining elements under 11 U.S.C. § 523(a).  With the bankruptcy court's findings of a lack of reasonable and justifiable reliance vacated, on remand the bankruptcy court shall also make determinations regarding the remaining elements of non-dischargeability pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (B).  Given the need for additional findings of fact as to all elements of non-dischargeability, as well as the retirement of the bankruptcy judge who oversaw the prior bench trial, the court remands for a new trial.

## CONCLUSION

Based on the foregoing, the court VACATES the bankruptcy court's reliance findings made pursuant to Bankruptcy Rule 7052 and REMANDS this case to the bankruptcy court for new trial for exception to discharge under 11 U.S.C. §§ 523(a)(2)(A) and (B), in accordance with the legal standards articulated in this order.  The clerk is DIRECTED to close this case.

SO ORDERED, this the 9th day of January, 2023.

_____
LOUISE W. FLANAGAN
United States District Judge