IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| KEITH D. SANDERS, | ) | |
| | ) | |
| Appellant/Cross-Appellee,[1] | ) | |
| | ) | |
| v. | ) | NO. 5:23-CV-00553-FL[1] |
| | ) | |
| FIRST RECOVERY, LLC, and DYLAN BROOKS, | ) | |
| | ) | |
| | ) | |
| Appellees/Cross-Appellant. | ) | |

**<u>ORDER</u>**

This matter is before the court on cross-appeals of a final order of the United States Bankruptcy Court for the Eastern District of North Carolina entering judgment in the amount of $1.3 million against Keith D. Sanders, in adversary proceeding captioned <u>First Recovery, LLC & Dylan Books v. Keith Douglas Sanders</u>, Case No. 20-00018-5-JNC (Bankr. E.D.N.C.) (the "adversary proceeding"). The issues raised have been briefed fully, and in this posture are ripe for ruling. For the reasons that follow, the judgment of the bankruptcy court is affirmed in part, and remanded for further proceedings consistent with this opinion.

---

[1]     On March 19, 2024, the court consolidated the instant appeal with the related appeal in <u>First Recovery, LLC v. Sanders</u>, No. 5:23-CV-584 (E.D.N.C.), and confirmed that all filings going forward shall be made in the instant appeal. Accordingly, the court constructively has amended the caption of this order to reflect the consolidation.

## STATEMENT OF THE CASE

Keith D. Sanders ("debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code August 9, 2019.  (Bankr. Op. (DE 1-1) 2).[2]  First Recovery ("FR") and Dylan Brooks ("Brooks") (together, the "creditors") began the adversary proceeding by filing complaint January 13, 2020, alleging that debtor had engaged in fraud relating to his sale of a business to creditors, and seeking a determination that the sale price was a nondischargeable debt under 11 U.S.C. § 523.  (Bankr. Op. 2–3).  Debtor received an order of discharge in the Chapter 7 case on January 15, 2020, pursuant to 11 U.S.C. § 727.  (See Case No. 19-03665-5-JNC (E.D.N.C. Bankr. Jan. 15, 2020), DE 34).

After motions practice in the adversary proceeding, trial took place over nonconsecutive dates in August and October 2021.  Once creditors rested, debtor made an oral motion for a judgment on partial findings under Federal Rule of Bankruptcy Procedure 7052(c).  (Bankr. Op. 3).  After briefing, the bankruptcy court entered an order and opinion granting the motion and entering judgment for debtor.  (Id.).  Creditors appealed, and this court vacated and remanded for a new trial, instructing the bankruptcy court to make new findings and re-evaluate its determinations under 11 U.S.C. § 523.  (See First Recovery, LLC & Dylan Brooks v. Keith D. Sanders, No. 5:21-cv-530-FL (E.D.N.C. Jan. 9, 2023), DE 39)

A new trial took place July 13, 2023.  The parties submitted post-trial briefs, and the bankruptcy court entered the order and opinion under review August 31, 2023.  The instant appeal commenced October 6, 2023.  Debtor and creditor filed their opening briefs January 2, 2024, and February 1, 2024, respectively, relying upon a voluminous appellate record.[3]

---

[2]  Throughout this order, page numbers in citations are to the page number of the document in the court's case management /electronic case filing ('CM/ECF') system rather than the page number, if any showing on the face of the document.

[3]  Because the parties cross-appeal, there are more briefs involved in this case than usual, and the parties combine some of their briefs.  For example, the creditors filed their appellee opposition brief and cross-appeal opening brief as one

2

## STATEMENT OF FACTS

The parties make entirely legal arguments on appeal, and neither side challenges any findings of fact as clearly erroneous.  The court therefore relies upon the bankruptcy court's findings of fact, which, upon review, it deems not clearly erroneous.

In 2004, debtor formed an auto recovery, towing, and repossession business, and later sold the towing side of the business to form Unlimited Recovery Repossession Division, LLC ("URRD"). (Bankr. Op. 4).  In late 2011, debtor sold URRD to Jordan and Linda Craft (the "Crafts").  (Id. 5).  As part of that sale, the Crafts reviewed URRD's 2008, 2009, and 2010 tax returns, and its 2011 profit and loss statement before electing to purchase URRD for around $1.2 million.  (Id.).  During the negotiations, debtor did not provide access to bank statements or the Recovery Database Network ("RDN"), the company's database storing customer and revenue reports on repossessions.  (Id.).

Following the sale, the Crafts gained access to RDN and URRD's bank statements, and found that the company's repossession numbers and revenue were "significantly less" than had been represented during sale.  (Id.).  They also discovered that URRD's revenue was "inflated" by the sale of the towing side of the business in 2010, and by substantial revenue from buying and reselling vehicles, which sales were not disclosed as a substantial part of the business during the pre-closing period.  (Id.).  Debtor also represented that URRD's lot leases, customer contracts, and bonds needed to operate as a repossession business could be assigned following the sale; post-closing, the Crafts discovered that these contracts were not unilaterally assignable by debtor.  (Id. 5–6).  The Crafts were

---

document, and debtor filed his appeal's reply brief and his cross-appeal opposition brief in the same way.  To avoid confusion in labelling such combined documents as responses or replies in citations, the court adopts the following citation convention for this order:

1) Debtor's appeal opening brief (DE 35): "Debtor's Br. 1";
2) Creditors' opposition brief against debtor's appeal and cross-appeal opening brief (DE 36): "Creditors' Br. 1";
3) Debtor's appeal reply brief and cross-appeal opposition brief (DE 37): "Debtor's Br. 2";
4) Creditors' cross-appeal reply brief (DE 38): "Creditors' Br. 2."

3

therefore unable to continue normal operations. (Id. 6). They sued debtor, and eventually reached a settlement with him to unwind the sale, under which the Crafts would be reimbursed, and debtor would reassume control, liabilities, and ownership over URRD. (Id. 6). Debtor subsequently re-listed URRD for sale. (Id.).

Around this time, Brooks was looking to invest in a new business. Brooks holds an economics degree from the Wharton School of Business at the University of Pennsylvania, and had purchased and owned multiple businesses before the events of this case, but had no prior knowledge or experience operating a repossession business. (Id.). Brooks is the managing member of plaintiff FR. (Compl. (DE 11-1) ¶ 2). On October 7, 2014, Brooks reached out to debtor's broker for more information about URRD, and received a business summary report, financial spreadsheets, and an asset list. (Id.). This packet included a short summary of URRD's repossession business, and stated that "the buyer must ultimately complete their own due diligence to determine whether or not to invest in the business." (Id. 7). In addition to this packet, Brooks reviewed URRD's 2009-2013 tax returns, and various profit and loss statements, but was denied access to RDN, QuickBooks files, and bank records. During negotiations, debtor made numerous written and oral representations to creditors about URRD, which will be discussed in more detail in the analysis herein.

Before closing on the purchase, Brooks did not discover the lawsuit arising from the Craft sale, but did become aware of $350,000 in unpaid payroll taxes and a federal tax lien against URRD's assets; debtor represented that these were due to the Craft sale and that URRD was not responsible for them. (Id. 9–10). Further, URRD and debtor took out loans before closing, which inflated revenue in URRD's financials before purchase. (Id. 11). Brooks reviewed the provided documents and debtor's assertions, and purchased URRD for $1.3 million, which sale closed July 31, 2015. (Id. 11).

4

After closing, Brooks made several discoveries, including the lawsuit arising from the Craft sale, discrepancies in revenue numbers relative to figures represented by debtor pre-closing, and that various other representations by debtor before sale had been false.  (Id. 9–11).

## COURT'S DISCUSSION

A.    Standard of Review

This court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a) to review the bankruptcy court's orders.  "An appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts." 28 U.S.C. § 158(c)(2).  "On an appeal the district court . . . may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings." Harman v. Levin, 772 F.2d 1150, 1153 n.3 (4th Cir. 1985).[4]  "Legal conclusions are reviewed de novo, but findings of fact will only be set aside if clearly erroneous."    Schlossberg v. Barney, 380 F.3d 174, 178 (4th Cir. 2004).  A finding of fact is clearly erroneous, although there is evidence to support it, when the reviewing court, after carefully examining all the evidence, is "left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985).

> If the [lower court's] account of the evidence is plausible in light of the record viewed in its entirety, the [appellate court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

Id. at 573-74.

---

[4]    Internal citations and quotation marks are omitted from all citations unless otherwise specified.

B.      Analysis

Debtor raises three issues challenging the bankruptcy court's judgment on appeal: 1) whether creditor Brooks had standing to pursue claims in the bankruptcy court against debtor; 2) whether the bankruptcy court adequately found the existence of a debt owed to creditors; and 3) whether the bankruptcy court correctly found such debt nondischargeable under 11 U.S.C. § 523(a)(2)(A).  On cross-appeal, creditors challenge the bankruptcy court's determination that 11 U.S.C. § 523(a)(2)(B) did not bar the debt's discharge.  The court addresses these issues in turn below.

1.      Debtor's Appeal

a.      Brooks's Standing

Standing is rooted in the case or controversy requirement found in Article III of the Constitution.  Spokeo, Inc. v. Robins, 578 U.S. 330, 337 (2016).  The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court.  Id. at 338.  "The irreducible constitutional minimum of standing contains three elements": an injury that is "concrete and particularized"; a causal connection between the injury and the conduct complained of; and likelihood that the injury will be "redressed by a favorable decision."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  Relevant here is the first element: injury.  This element requires "an invasion of a legally protected interest[,]" id. at 560, that is "concrete and particularized and actual or imminent, not conjectural or hypothetical."  Robins, 578 at 339.[5]

Debtor contends that Brooks lacked standing because he lacked any injury, requiring dismissal of his claims. Brooks, in turn, contends that he sustained an injury in fact, because: 1) debtor sold URRD to both Brooks and First Recovery; 2) creditors' offer to purchase included Brooks,

---

[5]      Although the United States Court of Appeals for the Fourth Circuit has stated that "the Constitution does not require [a case to] be an Article III case or controversy for the bankruptcy court to act," the court also recognized that "before a bankruptcy case is referred to a bankruptcy court, the case must satisfy Article III."  Kiviti v. Bhatt, 80 F.4th 520, 533 (4th Cir. 2023).  The court accordingly assumes, without deciding, that Article III standing requirements apply.

individually; 3) Brooks personally guaranteed the loan that financed the purchase; 4) Brooks personally relied upon debtor's representations in deciding whether to purchase URRD; and 5) Brooks personally suffered $1.3 million in damages.  (Creditors' Br. 1 at 27).

Most of Brooks's contentions do not demonstrate standing.  Debtor indeed testified at trial that he sold URRD to both Brooks and FR.  (July 13, 2021 Trial Tr. (DE 27) 45:23–25).  Similarly, the offer to purchase designates Brooks as a "purchaser."  (Debtor's Ex. 27 (DE 13-4)).  But the purchase contract listed only FR as a buyer, and contained a merger clause expressly "supersed[ing]" the purchase offer, and disclaiming any intent to create any contractual relationship between anybody except FR and URRD.  (See Appellee's Ex. 4 (DE 18-4) 7–8).  Likewise, the allegations in Brooks's complaint about his damages are insufficient.  (See Creditors' Br. 1 at 27).  By the time a case reaches past summary judgment, a party must produce evidence to support standing, and may not rest on its pleadings.  Clapper v. Amnesty Int'l USA, 568 U.S. 398, 411–12 (2013).[6]

However, creditors also rely upon Brooks's personal involvement in securing, and personal liability on, loans involved in the sale, which were in the bankruptcy court record but are not in the record on appeal.  Creditors point to a single, specific exhibit filed before the bankruptcy court: exhibit 29.  This court may take judicial notice of documents filed before the bankruptcy court, because they involve the same transactions, property and issues now on appeal.  See Colonial Penn. Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989); see also United States v. Fowler, 58 F.4th 142, 152 (4th Cir. 2023).[7]  Exhibit 29 indeed demonstrates that Brooks acted as the guarantor of a loan to FR for

---

[6]    The court also rejects creditors' contention that he has standing because the parties stipulated to the existence of subject matter jurisdiction in the bankruptcy court, and that debtor has never raised the issue of subject matter jurisdiction before this appeal.  (Creditors' Br. 1 (DE 36) 26).  The parties cannot stipulate to subject matter jurisdiction, a defect in which may be raised at any point during proceedings, including on appeal.  See Casa de Md. v. U.S. Dep't of Homeland Sec., 924 F.3d 684, 697 (4th Cir. 2019).

[7]    Debtor has not challenged these documents on authenticity or any other merits grounds, but rather only on their absence from the record before this court.  (See Debtor's Br. 2 at 8).

7

the purchase of URRD.  (See Adversary Proceeding (Doc. 124-13)).  Brooks therefore has established Article III standing.

Last, debtor argues that Brooks lacks statutory standing because he is not the creditor to whom any debt is owed under 11 U.S.C. § 523(c)(1).  (Debtor's Br. 1 at 24–25).  This argument is, however, more properly considered in analyzing whether Brooks is a creditor, under the bankruptcy code, on the disputed debt.  Statutory standing, such as under the bankruptcy code, is not an Article III matter.  See, e.g., CGM, LLC v. BellSouth Telecomms., Inc., 664 F.3d 46, 52 (4th Cir. 2011) (clarifying that statutory standing does not implicate Article III); In re McCurnin, 590 B.R. 729, 739 (Bankr. E.D. Va. 2018) (noting that this rule applies to adversarial bankruptcy proceedings).  The court thus turns next to that issue regarding the existence of a debt under the Bankruptcy Code.

> b.    Existence of a Debt

Debtor argues that the bankruptcy court did not analyze or establish properly the existence of an antecedent debt whose (non)dischargeability could be evaluated.  Debtor did not raise this argument before the bankruptcy court, so this court must first decide whether to reach this issue despite forfeiture.  The court concludes that it should.  On the merits, debtor argues that the bankruptcy court made no findings supporting a claim and resulting debt for fraud under North Carolina law, requiring remand.  The court agrees.

> i.    Forfeiture

Ordinarily, a party who fails to raise an argument in the first instance forfeits the right to do so on appeal.  In re Under Seal, 749 F.3d 276, 285 (4th Cir. 2014).  In a civil case, a court may consider an argument raised for the first time on appeal only if the new argument establishes "fundamental error."  Id.

8

Debtor did not dispute the existence of an underlying debt before the bankruptcy court. (See generally Debtor Trial Br. (DE 15-1)). He has therefore forfeited this issue on appeal.

However, courts may reach issues for the first time on appeal in some circumstances as noted, which standard is met here. This case is similar to Stewart v. Hall, 770 F.2d 1267 (4th Cir. 1985), where the United States Court of Appeals for the Fourth Circuit found the relevant standard met when a district judge tried a diversity jurisdiction medical malpractice suit, and instructed the jury, on a clearly erroneous legal theory under the applicable state's law. See id. at 1270–71. As the court concludes below, the bankruptcy court did not analyze the existence of any underlying debt, therefore similarly bypassing a legal question necessarily antecedent to any determination of nondischargeability.

In addition and in the alternative, creditors have forfeited the forfeiture by failing to object in any fashion to debtor raising this argument on appeal. (See generally Creditors' Br. 1; Creditors' Br. 2 (DE 38)). The Fourth Circuit has not expressly addressed the issue, but many other federal courts of appeal have held that a party may lose its right to enforce a forfeiture on appeal through a failure to argue the point. See Calzone v. Summers, 942 F.3d 415, 421–22 (8th Cir. 2019) (en banc); Tibble v. Edison Int'l, 843 F.3d 1187, 1196 (9th Cir. 2016) (en banc); Petaluma FX Partners, LLC v. C.I.R., 792 F.3d 72, 78 (D.C. Cir. 2015); Cook v. Rockwell Int'l Corp., 618 F.3d 1127, 1138–39 (10th Cir. 2010); Atkins v. New York City, 143 F.3d 100, 103 (2d Cir. 1998); Soo Line R. Co. v. St Louis Ry. Co., 125 F.3d 481, 483 n.2 (7th Cir. 1997).

The court therefore reaches and addresses the issue of the existence of an underlying debt.

9

ii.   Merits

On the merits, debtor argues that the bankruptcy court did not analyze the validity of any underlying debt upon which a dischargeability determination could be made, instead proceeding directly to the latter question.  The court agrees.

The bankruptcy code defines "debt" as "liability on a claim," 11 U.S.C. § 101(12); the issue of nondischargeability is governed by the federal bankruptcy code, but the validity of a creditor's claim is determined by rules of state law.  Grogan v. Garner, 498 U.S. 279, 283 (1991).  Thus, § 523(a)(2) "takes the debt as it finds it" under state law.  See Bartenwerfer v. Buckley, 598 U.S. 69, 82 (2023).  Courts "have long recognized that the basic federal rule . . . is that state law governs the substance of claims."  Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 450–51 (2007).

A creditor's entitlements in bankruptcy arise from underlying substantive law, id. at 450, which requires bankruptcy courts to consult state law to determine the validity of most claims.  Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15, 20 (2000).  "Creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions" in the bankruptcy code.  Id.  When the bankruptcy code "uses the word 'claim' . . . it is usually referring to a right to payment recognized under state law."  Pac. Gas & Elec. Co., 549 U.S. at 451.  Accordingly, the determination of a valid claim is generally governed by state law.  See, e.g., In re Dubois, 834 F.3d 522, 529–30 (4th Cir. 2016) (examining how Maryland's statute of limitations operated to allow or disallow a claim arising under a federal statute); In re Nat'l Energy & Gas Transmission, Inc., 492 F.3d 297, 301 (4th Cir. 2007) (looking to New York law to resolve value of debt).

10

The United States Court of Appeals for the Fourth Circuit has not expressly held that a bankruptcy court must look to whether a valid claim exists under state law before determining dischargeability.  Nevertheless, courts at all levels across the country, including within this circuit, look to whether a valid claim exists under state law as necessarily antecedent to determining dischargeability. See, e.g., In re Buchanan, 31 F.4th 1091, 1094 (8th Cir. 2022) (examining existence of claims under Nebraska law before determining dischargeability); In re Morrison, 555 F.3d 473, 481–83 (5th Cir. 2009) (discussing fraud claim and imputation of liability doctrines under Texas law); In re Lang, 293 B.R. 501, 513–16 (B.A.P. 10th Cir. 2003) (same for claims under Utah law); In re Mullins, No. CO-20-046, 2021 WL 2679137, at *3–4 (B.A.P. 10th Cir. June 30, 2021) (stating that "the first step requires the trial court to determine whether the [creditor] holds a valid claim against the [debtor] which is controlled by state law," and analyzing asserted claims under Colorado law); In re Campbell, 545 B.R. 875, 886 (Bankr. M.D.N.C. 2016) (examining North Carolina fraud claim to determine existence of debt); In re Myrtle, 500 B.R. 441, 450–61 (Bankr. W.D. Va. 2013) (same under Virginia law); In re Janssens, 449 B.R. 42, 66–76 (Bankr. D. Md. 2010) (evaluating numerous Pennsylvania law claims to determine existence of debt before deciding dischargeability); In re Bundick, 303 B.R. 90, 103, 112–18 (Bankr. E.D. Va. 2003) (examining Virginia law claims as antecedent to dischargeability); In re Miller, 589 B.R. 550, 561 (Bankr. S.D. Miss. 2018) (same under Mississippi law); In re Mazik, 592 B.R. 604, 609–10 (Bankr. E.D. Pa. 2018) (Pennsylvania law); In re August, 448 B.R. 331, 347 (Bankr. E.D. Pa. 2011) (Pennsylvania law and collecting cases); In re Sullivan, 305 B.R. 809, 821 (Bankr. W.D. Mich. 2004) (Michigan law); In re Roland, 294 B.R. 244, 249 (Bankr. S.D.N.Y. 2003) (New York law and collecting cases); In re Trovato, 145 B.R. 575, 579 (Bankr. N.D. Ill. 1991) (Illinois law).

11

The bankruptcy court's opinion acknowledged the need to determine the existence of a debt, but did not conduct any analysis of any claim under North Carolina law.  (See Bankr. Op. 13–14).  Debtor agrees that creditors advance North Carolina fraud claims in their complaint.  (See Compl. ¶¶ 75–115; Debtor's Br. 1 at 28–30).  But the elements for fraud under North Carolina common law, and for fraud under the two prongs of § 523 at issue in this case, are not identical, so the court cannot read the bankruptcy court's discussion of § 523 to simultaneously address fraud under North Carolina law.

In particular, § 523(a)(2)(A) requires: "(1) false representation, (2) knowledge that the representation was false, (3) intent to deceive, (4) justifiable reliance on the representation, and (5) proximate cause of damages."  In re Rountree, 478 F.3d 215, 218 (4th Cir. 2007).  Section 523(a)(2)(B), requires, further, 1) "use of a statement in writing," 2) "that [was] materially false," 3) "respecting the debtor's . . . financial condition," 4) "on which the creditor . . . reasonably relied," and 5) "that the debtor caused to be made or published with intent to deceive." 11 U.S.C. § 523(a)(2)(B); see In re Sharp, 340 F. App'x 899, 901 (4th Cir. 2009).[8]  Fraud under North Carolina law overlaps only partially with these two standards, requiring: "(1) False representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with intent to deceive; (4) which does in fact deceive, [and] (5) resulting in damage."  Forbis v. Neal, 361 N.C. 519, 526–27 (2007).  Further, "any reliance on . . . false representations must be reasonable."  Id. at 527.[9]

The North Carolina fraud elements are therefore generally encompassed within § 523(a)(2)(A), except for the "reasonable" reliance element.  Id.  North Carolina's "reasonable"

---

[8]    The Fourth Circuit has not addressed the § 523(a)(2)(B) standard in detail in a published opinion, so the court relies upon unpublished opinions buttressed by authority from other federal courts of appeals in the analysis herein.

[9]    This reliance requirement is universally propounded by the North Carolina courts as a de facto sixth element, but never placed in the numbered list containing the other five.  The court follows this convention here.

reliance requirement does not match precisely the standard set by § 523(a)(2)(A) or (B), when considering details of the treatment of each standard in the law, set forth as follows.

First, "justifiable reliance" is a subjective standard involving the qualities and characteristics of a particular plaintiff, not an objective reasonableness standard.  <u>Field v. Mans</u>, 516 U.S. 59, 71 (1995).  It is a low standard; for example, a land buyer's reliance on a representation from the seller that the land is free of encumbrances is justifiable, even if the buyer could have easily learned of an unsatisfied mortgage at the register of deeds.  <u>Id.</u> at 70 (drawing this example from the Restatement (Second) of Torts).    Nonetheless, a party does not justifiably rely upon a patently false misrepresentation discoverable upon cursory examination.  <u>Id.</u> at 71.  Thus, justifiable reliance does not normally carry a duty to investigate, except if the true facts should have been apparent to the plaintiff from a "cursory glance," or if he actually discovered a warning of deception.  <u>Id.</u> at 71–72; <u>In re Sharp</u>, 340 F. App'x at 906–07.

"Reasonable reliance" under § 523(a)(2)(B), by contrast, is an objective standard, under which the court should assess the circumstances to determine whether the creditor exercised objectively reasonable care.  <u>See</u> <u>In re Sharp</u>, 340 F. App'x at 908; <u>In re Cohn</u>, 54 F.3d 1108, 1117 (3d Cir. 1995).  Relevant factors in this inquiry include the creditor's standard practices in evaluating creditworthiness, industry standards for the same, the circumstances surrounding the transaction, the existence of any red flags, the history of dealings between the parties, and whether minimal investigation by the creditor would have revealed deception or inaccuracy.  <u>See</u> <u>In re Sharp</u>, 340 F. App'x at 908; <u>In re Cohn</u>, 54 F.3d at 1117; <u>In re Coston</u>, 991 F.2d 257, 261 (5th Cir. 1993) (en banc).[10]

Finally, under North Carolina law, reasonableness of reliance is "dependent upon the circumstances," "will vary according to a good many factors" and is a question for the factfinder.

---

[10]      The parties agree that these factors are the relevant test.  (<u>See</u> Creditors' Br. 1 at 59–61; Debtor's Br. 2 at 13–14).

13

Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP, 350 N.C. 214, 225 (1999).  "Just where reliance ceases to be reasonable and becomes such negligence and inattention that it will, as a matter of law, bar recovery for fraud is frequently very difficult to determine."  Forbis, 361 N.C. at 527.

Some North Carolina case law suggests that the reasonable reliance standard is close to the "justifiable reliance" standard under § 523(a)(2)(A).  Rountree, 478 F.3d at 218.  For example, reliance is reasonable, under North Carolina law, "where the parties have not equal knowledge and he to whom the representation is made has no opportunity to examine the property[.]"  Harding v. S. Loan & Ins. Co., 10 S.E.2d 599, 602 (N.C. 1940).  Like the justifiable reliance standard, a fraud plaintiff may pursue that claim where the buyer "has no opportunity to examine the property or by fraud is prevented from making an examination[,]"  Id. (emphasis added), or when the seller engages in "artifice reasonably calculated to induce the purchaser to forego investigation" or "induce[s] [the buyer] to forbear inquiries which he would otherwise have made."  Id.; Olivetti Corp. v. Ames Bus. Sys., Inc., 319 N.C. 534, 544 (1987); RD & J Props. v. Lauralea-Dilton Enters., LLC, 165 N.C. App. 737, 746 (2004); State Props., LLC v. Ray, 155 N.C. App. 65, 73 (2002); Bolick v. Townsend Co., a Subsidiary of Merrill Lynch Realty Associates, Inc., 94 N.C. App. 650, 656 (1989).  As discussed below, the bankruptcy court concluded that debtor made additional representations to stymie some of creditors' attempts to perform due diligence and "induce [creditors] to forego investigation."

On the other hand, the above-quoted cases may map more closely onto the "reasonable reliance" standard set under § 523(a)(2)(B), because in "an arm's-length transaction, when a purchaser of property has the opportunity to exercise reasonable diligence and fails to do so, the element of reasonable reliance is lacking."  Calloway v. Wyatt, 246 N.C. 129, 134 (1957); see RD & J Props., 165 N.C. App. at 746; Cobb v. Pa. Life Ins. Co., 215 N.C. App. 268, 277 (2011); Hudson-Cole Dev. Corp. v. Beemer, 132 N.C. App. 341, 346 (1999).

14

The bankruptcy court conceivably could find that reliance under state law was met, or the opposite, depending on, for example, whether debtor's actions constituted denying an opportunity to investigate, among other factors.  Mindful of the Supreme Court of North Carolina's clear holdings that this reliance question is a matter for the factfinder, the court therefore remands for the bankruptcy court to address in the first instance the reasonable reliance standard under North Carolina law.[11]

The bankruptcy court concluded that Sanders made material false representations, with intent to deceive, which deceived creditors, resulting in damages.  The bankruptcy court's findings and conclusions in this respect are not disturbed, and it need not re-address these elements under North Carolina law on remand.[12]  Instead, the bankruptcy court need only resolve whether creditors reasonably relied upon the misrepresentations under North Carolina law, and causation only insofar as it intersects with Brooks's statutory standing.

In sum, remand is therefore necessary for the bankruptcy court to address the existence of a debt, by evaluating whether the evidence presented at trial, or such further evidence as the bankruptcy court deems necessary to receive, established a debt owed to creditors arising through a claim for fraud under North Carolina law.  Specifically, the bankruptcy court on remand should examine 1) whether a debt for fraud under North Carolina law, owed by Sanders to FR and/or Brooks, exists, subject to the limitations in the preceding paragraph, and 2) whether Brooks has standing under the bankruptcy code to pursue such debt including, but not limited to, whether Brooks qualifies as a creditor on such debt, if one exists, under 11 U.S.C. § 523(c)(1).

---

[11]   Notably, creditors make no argument against remand on this basis, or indeed against debtor's contentions on the existence of a debt in general.

[12]   The bankruptcy court did not expressly address whether creditors were in fact deceived under that label, but its findings of fact demonstrate that it found such element met.  (See Bankr. Op. 11–12).

### c.    11 U.S.C. § 523(a)(2)(A)

Despite concluding that a remand is necessary, the court will proceed to address the parties'

cross-appeals on the applicability of § 523, in the interests of judicial economy and to narrow the

issues the bankruptcy court must address on remand.

Debtor challenges only the "justifiable reliance" element under § 523(a)(2)(A), <u>Rountree</u>, 478

F.3d at 218, and whether the false statements were about the financial condition of URRD, which he

argues removes them from that provision's scope.  The court disagrees with each point.

### i.    Justifiable Reliance

Applying the principles set forth in the "justifiable reliance" standard, <u>Rountree</u>, 478 F.3d at

218, as discussed above, to the parties' conduct as set forth in the bankruptcy court's findings of fact,

the court agrees with the bankruptcy court's conclusion that creditors acted in justifiable reliance of

debtor's representations.  The bankruptcy court concluded that though creditors identified some

grounds for suspicion, debtor made further false representations which satisfactorily resolved the

issues creditors identified.  (Bankr. Op. 20).  Debtor points to five red flags as giving rise to a duty to

investigate, but most were explained through further misrepresentations to creditor's reasonable

satisfaction.

First, creditors learned of a $350,000 tax lien.  (Debtor's Br. 1 at 33).  But debtor explained

that this lien arose by mistake as a result of the Craft sale, and that it had since been resolved.  (Trial

Tr. Day 2 (DE 24) 13:1–13; Trial Tr. Day 3 (DE 25) 102:8–21).  Second, the income on URRD's

documents did not match the income on its tax returns for the one year.  (Debtor's Br. 1 at 33).

However, creditor noted that the returns for all other years were consistent, that the discrepancy was

not large, and that he was not an accountant in any case.  (Trial Tr. Day 1 (DE 23) 47:18–48:16).

Third, debtor argues that creditors learned that the top four banks in the country were not actually

16

URRD customers, contrary to statements in URRD's documentation.  (Debtor's Br. 1 at 33). However, debtor represented to creditors that URRD's clients change from year to year, which creditors took as a satisfactory explanation.  (See Trial Tr. Day 2 20:4–10, 22:16–20).

Fourth, debtor contends that creditors learned that some drivers received salaries, in contrast to debtor's representations.  (Debtor's Br. 1 at 34).  Here, however, creditors learned of this discrepancy only "just before" the sale.  (Trial Tr. Day 1 at 93:7–13).  The court acknowledges that creditors did learn of this discrepancy in time, and that debtor did not satisfactorily explain it.  But this single anomaly is insufficient to render creditors' reliance not justifiable, given that all other issues had been resolved, and that creditors learned of the issue "just before" closing, after they had committed time and resources to the sale.  Fifth and finally, debtor points out that he misrepresented the status of the Craft sale.  (Debtor's Br. 1 at 34).  But debtor provided various statements about this sale, falsely explaining it away to benefit debtor's credibility in creditors' eyes.  (See Trial Tr. Day 2 82:1–15).

Last, debtor places weight on Brooks's sophistication and education.  (See Debtor's Br. 1 at 33). But this consideration does not generate a heightened duty to investigate alone.  See In re Biondo, 180 F.3d 126, 135 (4th Cir. 1999) (holding that creditor law firm's size and sophistication created no additional duty to investigate).

In sum, the court concludes that creditors perceived only one unexplained red flag, the issue of driver payments, but that this single red flag did not create a duty to investigate, given timing and the lack of any other unexplained issues.  In turn, the absence of such duty rendered creditors' actions justifiable.  The court affirms the bankruptcy court's ruling that the justifiable reliance standard under § 523(a)(2)(A) was met.

17

ii.     Financial Condition

Section 523(a)(2)(A) exempts "statements[s] respecting the debtor's or an insider's financial condition" from its scope.  Accordingly, debtor argues that his false statements were within the sweep of this exception, precluding any application of § 523(a)(2)(A).  The court disagrees.

As a threshold matter, if a debtor is an individual, as here, an "insider" is a corporation of which the debtor is  "director, officer, or person in control[.]"  11 U.S.C. § 101(31)(A).  Creditors do not dispute that URRD was an insider as to debtor, so that debtor's statements about URRD implicate this provision.

The parties' arguments revolve around Lamar, Archer & Cofrin, LLP v. Appling, 584 U.S. 709 (2018).  Appling embraced an expansive reading of "respecting . . . financial condition," concluding that this category did not capture solely statements about overall financial status, but also statements about the value or status of a single asset.  See id. at 719–20.

Accordingly, debtor argues that his various false representations all qualify as statements about URRD's financial condition, outside the scope of § 523(a)(2)(A).  (See Debtor's Br. 1 at 35–39).  The court agrees as to some statements, but disagrees as to others, and therefore concludes that § 523(a)(2)(A) remains applicable.

Debtor challenges statements regarding five subjects: 1) the number of hours debtor spent overseeing the business of URRD; 2) maintenance and inspection status of URRD's trucks; 3) assignability of URRD's leases; 4) experience of URRD's drivers; 5) the Craft sale.  (See Debtor's Br. 1 35–39; Creditors' Br. 1 at 46).

Subjects 1, 2 and 4 above concern UURD's financial condition.  The maintenance of URRD's trucks certainly affected their value, while the experience of the drivers would impact their pay and the value of their labor to the business.  And Brooks testified that the number of management hours

18

required to operate the business directly impacted how many employees it needed, and hence its financial condition.  (See Trial Tr. Day 2 at 99:9–22).

However, whether the leases could be assigned, subject 3 above, does not relate to financial condition.  In In re Biondo, the Fourth Circuit upheld the application of § 523(a)(2)(A) to misrepresentations about the assignment of a legal interest.  See In re Biondo, 180 F.3d at 130.[13]  This decision in like circumstances therefore compels the conclusion that similar misrepresentations do not trigger § 523(a)(2)(A)'s financial condition exception here.

Similarly, the court cannot conclude that the details of the Craft sale, subject 5 above, pertained to URRD's financial condition.  Appling's language and holding are not limitless.  The Court there provided that a statement respects a debtor's financial condition if:

> "it has a direct relation to or impact on the debtor's overall financial status.  A single asset has a direct relation to and impact on aggregate financial condition, so a statement about a single asset bears on a debtor's overall financial condition and can help indicate whether a debtor is solvent or insolvent, able to repay a given debt or not."

Appling, 584 U.S. at 720 (emphasis added).

Applying this limiting principle here illustrates that statements about the Craft sale were not about debtor's financial condition.  Debtor's false representations about the sale were made three years after its unwinding, and so did not bear on debtor or URRD's solvency or insolvency so much later in time.  See Appling, 584 U.S. at 720.  Debtor's circular argument that "[t]he explanation [of the Craft sale] was respecting the financial condition of URRD, because it was concerning the profitability of the business" is unavailing.  (Debtor's Br. 1 at 39).  These statements did not relate to URRD's financial condition, and fall outside the scope of that exception.

---

[13]    In re Biondo predated Appling, but the Fourth Circuit had already embraced the expansive view of "respecting . . . financial condition" which Appling upheld.  See Engler v. Van Steinburg, 744 F.2d 1060, 1061 (4th Cir. 1984).

19

In sum, the court concludes that at least some of debtor's misrepresentations were outside the scope of the financial condition exception. The court therefore affirms the bankruptcy court's determination that § 523(a)(2)(A) renders the debt here nondischargeable, <u>if</u> such debt is determined to exist on remand.

    2.        Creditors' Appeal: 11 U.S.C. § 523(a)(2)(B)

The court has concluded that the disputed debt, if it exists, is nondischargeable under § 523(a)(2)(A). Examination of dischargeability under § 523(a)(2)(B) is therefore unnecessary, because if such debt exists, it is nondischargeable under § 523(a)(2)(A); if no debt exists, dischargeability is beside the point. As such, the court does not address creditors' cross-appeal on § 523(a)(2)(B).

## CONCLUSION

Based on the forgoing the court reaches the following decisions on the parties' cross-appeals:

1.    This action is REMANDED for further proceedings not inconsistent with this opinion, including for the bankruptcy court to address in the first instance the following two questions:

        a.      Whether a debt for fraud under North Carolina law, owed by Sanders to FR and/or Brooks, exists. The bankruptcy court need only conduct this analysis subject to the limitations set forth in this order; and

        b.      Whether Brooks qualifies as a creditor on such debt, if one exists, within the meaning of the bankruptcy code, including but not limited to under 11 U.S.C. § 523(c)(1).

2.    The bankruptcy court's order is AFFIRMED as to the determination that 11 U.S.C. § 523(a)(2)(A) renders the debt, if one exists, nondischargeable.

20

SO ORDERED, this the 5th day of August, 2024.

LOUISE W. FLANAGAN
United States District Judge

21