IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:25-CV-1-FL

| | | |
|---|---|---|
| KEITH DOUGLAS SANDERS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| FIRST RECOVERY, LLC and DYLAN BROOKS, | ) ) | |
| | ) | |
| Appellees. | ) | |

This matter is before the court on appeal of a final order of the United States Bankruptcy Court for the Eastern District of North Carolina entering judgment in the amount of $1,687,027.83 plus interest in favor of appellees in adversary proceeding captioned <u>First Recovery, LLC, & Dylan Brooks v. Keith Douglas Sanders</u>, No. 20-00018-5-JNC (Bankr. E.D.N.C.) (the "adversary proceeding"). The issues raised have been briefed fully and in this posture are ripe for ruling. For the following reasons, the judgment of the bankruptcy court is affirmed.

### STATEMENT OF THE CASE

Keith D. Sanders ("Sanders" or "appellant") filed voluntary petition under Chapter 7 of the Bankruptcy Code August 9, 2019. (Bankr. Order (DE 1-2) at 2).[1] First Recovery, LLC ("First Recovery") and Dylan Brooks ("Brooks") (together, "appellees") initiated adversary proceeding by filing complaint January 13, 2020, alleging that appellant had engaged in fraud relating to his

---

[1] Throughout this order, page numbers in citations are to the page number of the document in the court's case management/electronic case filing ('CM/ECF') system rather than the page number, if any, showing on the face of the underlying document.

sale of a business to appellees, and seeking a determination that the sale price was a nondischargeable debt under 11 U.S.C. § 523. (Id. at 3). Appellant received an order of discharge in the Chapter 7 case on January 15, 2020, pursuant to 11 U.S.C. § 727. See Case No. 19-03665-5-JNC (Bankr. E.D.N.C.), (Doc. 34).

Trial in the adversary proceeding took place over nonconsecutive dates in August and October 2021. Once appellees rested, appellant made oral motion for judgment on partial findings under Federal Rule of Bankruptcy Procedure 7052(c). (Bankr. Order (DE 1-2) at 3). After briefing, the bankruptcy court entered order and opinion granting the motion and entering judgment for appellant. (Id.). First Recovery and Brooks appealed, and this court vacated and remanded for a new trial, instructing the bankruptcy court to make new findings and re-evaluate its determinations under 11 U.S.C. § 523. See Order, First Recovery, LLC et al. v. Keith D. Sanders, No. 5:21-CV-530-FL (E.D.N.C. Jan. 9, 2023), (DE 39).

A new trial took place July 13, 2023. The parties submitted post-trial briefs, and the bankruptcy court entered order and judgment in the amount of $1.3 million in favor of appellees August 31, 2023. See First Recovery, LLC v. Sanders (In re Sanders), Ch. 7 Case No. 19-3665-5-JNC, Adv. No. 20-18-5-JNC, 2023 WL 5658797 (Bankr. E.D.N.C. Aug. 31, 2023). Sanders appealed, and First Recovery and Brooks filed cross-appeal. This court consolidated the appeals and entered order affirming in part the bankruptcy court's August 31, 2023, judgment and remanding for the bankruptcy court to address "[w]hether a debt for fraud under North Carolina law, owed by Sanders to [First Recovery] and/or Brooks, exists," and "[w]hether Brooks qualifies as a creditor on such debt, if one exists." Sanders v. First Recovery, LLC, No. 5:23-CV-553-FL, 2024 WL 4164163, at *10 (E.D.N.C. Aug. 6, 2024).

On remand, the parties filed briefs and entered certain exhibits and facts into the record by

2

stipulation. The bankruptcy court entered order and judgment under review December 17, 2024, and the instant appeal commenced January 2, 2025. Appellant and appellees filed briefs March 14, 2025, and April 28, 2025, respectively, relying upon a voluminous appellate record.

## STATEMENT OF FACTS

Where they are not disputed, the court incorporates the facts as set out in its August 5, 2024, order:

> In 2004, [appellant] formed an auto recovery, towing, and repossession business, and later sold the towing side of the business to form Unlimited Recovery Repossession Division, LLC ("URRD"). (Bankr. Op. 4). In late 2011, [appellant] sold URRD to Jordan and Linda Craft (the "Crafts"). (Id. 5). As part of that sale, the Crafts reviewed URRD's 2008, 2009, and 2010 tax returns, and its 2011 profit and loss statement before electing to purchase URRD for around $1.2 million. (Id.). During the negotiations, [appellant] did not provide access to bank statements or the Recovery Database Network ("RDN"), the company's database storing customer and revenue reports on repossessions. (Id.).
>
> Following the sale, the Crafts gained access to RDN and URRD's bank statements, and found that the company's repossession numbers and revenue were "significantly less" than had been represented during sale. (Id.). They also discovered that URRD's revenue was "inflated" by the sale of the towing side of the business in 2010, and by substantial revenue from buying and reselling vehicles, which sales were not disclosed as a substantial part of the business during the pre-closing period. (Id.). [Appellant] also represented that URRD's lot leases, customer contracts, and bonds needed to operate as a repossession business could be assigned following the sale; post-closing, the Crafts discovered that these contracts were not unilaterally assignable by [appellant]. (Id. 5–6). The Crafts were therefore unable to continue normal operations. (Id. 6). They sued [appellant], and eventually reached a settlement with him to unwind the sale, under which the Crafts would be reimbursed, and [appellant] would reassume control, liabilities, and ownership over URRD. (Id. 6). [Appellant] subsequently re-listed URRD for sale. (Id.).
>
> Around this time, Brooks was looking to invest in a new business. Brooks holds an economics degree from the Wharton School of Business at the University of Pennsylvania, and had purchased and owned multiple businesses before the events of this case, but had no prior knowledge or experience operating a repossession business. (Id.). Brooks is the managing member of plaintiff [First Recovery]. (Compl. (DE 11-1) ¶ 2). On October 7, 2014, Brooks reached out to [appellant's] broker for more information about URRD, and received a business summary report, financial spreadsheets, and an asset list. (Id.). This packet

included a short summary of URRD's repossession business, and stated that "the buyer must ultimately complete their own due diligence to determine whether or not to invest in the business." (Id. 7). In addition to this packet, Brooks reviewed URRD's 2009-2013 tax returns, and various profit and loss statements, but was denied access to RDN, QuickBooks files, and bank records. During negotiations, [appellant] made numerous written and oral representations to [appellees] about URRD, which will be discussed in more detail in the analysis herein.

Before closing on the purchase, Brooks did not discover the lawsuit arising from the Craft sale, but did become aware of $350,000 in unpaid payroll taxes and a federal tax lien against URRD's assets; [appellant] represented that these were due to the Craft sale and that URRD was not responsible for them. (Id. 9–10). Further, URRD and [appellant] took out loans before closing, which inflated revenue in URRD's financials before purchase. (Id. 11). Brooks reviewed the provided documents and [appellant's] assertions, and purchased URRD for $1.3 million, which sale closed July 31, 2015. (Id. 11).

After closing, Brooks made several discoveries, including the lawsuit arising from the Craft sale, discrepancies in revenue numbers relative to figures represented by [appellant] pre-closing, and that various other representations by [appellant] before sale had been false. (Id. 9–11).

Sanders, 2024 WL 4164163, at *2-3.

The court also incorporates the additional facts stipulated by the parties following remand:

a. First Recovery[] is a corporation organized and existing under the laws of the State of North Carolina and having its principal place of business in Wake County, North Carolina.

b. [] Brooks is the managing member of First Recovery and is a resident and citizen of Forsyth County, North Carolina.

c. Unlimited Rec-Rep, LLC ("URR"), is formerly known as [URRD], and is a limited liability company established under the laws of the State of North Carolina, comprised of a sole member, [] Sanders, with its principal office in Wake County, North Carolina.

d. [] Sanders is a citizen and resident of Wake County, North Carolina.

e. On or about August 13, 2004, Sanders formed Unlimited Recovery, LLC, ("Unlimited Recovery"). Unlimited Recovery provided towing and asset recovery (or repossession) services under the name "Unlimited Recovery."

f. On or about June 17, 2010, Sanders formed [URRD] a/k/a URR.

g. First Recovery[] d/b/a Unlimited Recovery Repossession was the borrower under

4

       a Loan Agreement evidencing a[] [United States Small Business Administration ("SBA")]-guaranteed loan from Yadkin Bank in the amount of $1,168,000, signed on July 31, 2015 (the "SBA Loan").

h. [] Brooks personally guaranteed the SBA Loan.

i. The Yadkin Bank loan was backed by the [SBA].

j. First Recovery[] required the Yadkin Bank loan to finance the purchase of URR.

k. Yadkin Bank and the [SBA] required the personal guaranty of the loan by [] Brooks as a condition of the loan.

l. The terms and conditions of the loan between Yadkin Bank, First Recovery[], and [] Brooks were documented in the loan agreement contained in Exhibit 29.

m. The disposition of the loan funds was documented in the HUD-1 settlement statement contained in Exhibit 29 and shows that the loan proceeds were paid to a company that was wholly owned by [] Sanders.

n. The United States Treasury and the [SBA] have been actively attempting to collect the loan balance from [] Brooks due to his personal guaranty on the Yadkin Bank loan.

o. The amount due and owing by First Recovery[] and [] Brooks to the United States Treasury and the [SBA] as of September 30, 2016, was $1,127,056.60.

p. The amount due and owing by First Recovery[] and [] Brooks to the United States Treasury and the [SBA] as of June 23, 2022, was $1,687,027.83.

(Bankr. Order (DE 1-2) at 11-12).

## COURT'S DISCUSSION

A.    Standard of Review

This court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a) to review the bankruptcy court's orders. "An appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts." 28 U.S.C. § 158(c)(2). "On an appeal the district court . . . may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for

5

further proceedings." Harman v. Levin, 772 F.2d 1150, 1153 n.3 (4th Cir. 1985).[2] "Legal conclusions are reviewed de novo, but findings of fact will only be set aside if clearly erroneous." Schlossberg v. Barney, 380 F.3d 174, 178 (4th Cir. 2004). A finding of fact is clearly erroneous, although there is evidence to support it, when the reviewing court, after carefully examining all the evidence, is "left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985).

> If the [lower court's] account of the evidence is plausible in light of the record viewed in its entirety, the [appellate court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

Id. at 573-74. Remand is necessary if "the bankruptcy court's failure to make sufficient factual findings in support of its legal conclusions does not allow for meaningful appellate review under any standard." Behrmann v. Nat'l Heritage Found., 663 F.3d 704, 709 (4th Cir. 2011).

B.   Analysis

Appellant raises four issues: 1) whether the bankruptcy court correctly found that Brooks reasonably relied on appellant's representations; 2) whether the bankruptcy court properly found the existence of a debt for fraud owed by appellant to either or both appellees; 3) whether the bankruptcy court correctly found that Brooks qualifies as a creditor under 11 U.S.C. § 523(c)(1); and 4) whether the bankruptcy court adequately analyzed application of 11 U.S.C. § 523(a)(2)(A). The court addresses these issues in turn below.

   1.   Reasonable Reliance

Appellant first argues that the bankruptcy court erred in finding that Brooks's reliance on appellant's representations was reasonable. According to appellant, there were numerous "red

---

[2]   Internal citations and quotation marks are omitted from all citations unless otherwise specified.

flags" about appellant's business that Brooks should have investigated prior to closing the sale and Brooks unreasonably failed to do so.

In an action for fraud, "any reliance on the allegedly false representations must be reasonable," and "[t]he reasonableness of a party's reliance is a question for the [factfinder], unless the facts are so clear that they support only one conclusion." Forbis v. Neal, 361 N.C. 519, 527 (2007). Accordingly, this court directed the bankruptcy court to determine whether appellees had established reasonable reliance. Sanders, 2024 WL 4164163, at *8. This court specifically stated that "[t]he bankruptcy court conceivably could find that reliance under state law was met, or the opposite." Id. Thus, the facts are not "so clear that they support only one conclusion," and the question was returned properly to the bankruptcy court as factfinder. Forbis, 361 N.C. at 527.

Reliance is not reasonable when a business purchaser owned and operated multiple similar businesses and thus "was well aware of the risks involved." Thompson v. Bass, 261 N.C. App. 285, 291 (2018), rev. denied, 822 S.E.2d 617 (N.C. 2019); see Johnson v. Owens, 263 N.C. 754, 758 (1965) ("When the circumstances are such that a plaintiff seeking relief from alleged fraud must have known the truth, the doctrine of reasonable reliance will prevent him from recovering for a misrepresentation which . . . did not deceive him."). When parties have equal access to information, a "plaintiff [is] under a duty to make the minimal inquiry needed to find out the truth." Olivetti Corp. v. Ames Bus. Sys., Inc., 319 N.C. 534, 543 (1987). Therefore, "when the purchaser of property in an arm's length transaction . . . has the opportunity to exercise reasonable diligence and fails to do so, the element of reasonable reliance is lacking and the purchaser has no action for fraud." Geo Plastics v. Beacon Dev. Co., 434 Fed. App'x 256, 260-61 (4th Cir. 2011).

On the other hand, reliance is reasonable "where the parties have not equal knowledge and he to whom the representation is made has no opportunity to examine the property or by fraud is

7

prevented from making an examination." Harding v. S. Loan & Ins. Co., 218 N.C. 129, 135 (1940). Thus, "a seller who has intentionally made a false representation about something material, in order to induce a sale of his property, should not be permitted to say in effect, 'You ought not to have trusted me. If you had not been so gullible, ignorant, or negligent, I could not have deceived you.' " Johnson, 263 N.C. at 758. For example, a vendee's reliance was reasonable where its vendor "intentionally misled [the vendee] for the purpose of inducing [the vendee] to continue to deal," and "intentionally withheld information regarding" the vendor's relationship with a third party. Olivetti, 319 N.C. at 544.

On remand, the bankruptcy court found that Brooks conducted sufficient investigation into the indications of issues with appellant's business and that "[e]ach time Brooks made an inquiry after identifying a 'red flag,' Sanders responded with additional lies and material omissions, calculated to induce Brooks to continue the sales process." (Bankr. Order (DE 1-2) at 16). Specifically, the bankruptcy court found that Brooks raised concerns about the Craft sale and the assignability of the bonds, contracts, and leases and that appellant "provided plausible responses that appeared reasonable and did not create any basis for [appellees] to investigate further." (Id. at 17). Because Brooks "did not have any prior experience in the repossession industry," he had no heightened duty to investigate following appellant's apparently reasonable responses. (Id. at 17-18). Therefore, the bankruptcy court found that "Brooks reasonably investigated and relied, as required under North Carolina law, on the misrepresentations of [] Sanders." (Id. at 18).

The evidence supports the bankruptcy court's finding of reasonable reliance. Appellant's agent sent Brooks an email that provided false reasons regarding the business's failure when previously purchased by the Crafts. (See June 30, 2015, Email, Adversary Proceeding (Doc. 123-6)). Brooks testified that he did not contact the Crafts about the previous sale because appellant,

8

appellant's attorney, appellant's broker, and the bank representatives "told [Brooks] that the Crafts had mismanaged the business and had run it into the ground." (Oct. 18, 2021, Trial Tr. 82:1-15). Brooks also discussed transferability of the bond with appellant, and appellant said "that he could either assign or get [Brooks]." (Aug. 17, 2021, Trial Tr. 24:3-5). Because Sanders "intentionally misled" Brooks about the transferability of the bond and "intentionally withheld information" about the Craft sale, Brooks's reliance was not unreasonable. Olivetti, 319 N.C. at 544.

Appellant cites Dallaire v. Bank of Am., N.A., 367 N.C. 363 (2014), for the proposition that reliance on a misrepresentation is not reasonable "if the party fails to make reasonable inquiry" into the statement. (Appellant's Br. (DE 29) at 36 (quoting Dallaire, 367 N.C. at 369)). However, citing extensive record evidence, the bankruptcy court found that Brooks "made appropriate inquiries to Sanders regarding the assignability of" the bond and "obtained further information from Sanders and his agents" after raising concerns about the Craft Sale. (Bankr. Order (DE 1-2) at 17). Therefore, this court cannot conclude as a matter of law that Brooks "fail[ed] to make reasonable inquiry." Dallaire, 367 N.C. at 369.

Appellant also cites Cobb v. Pa. Life Ins. Co., 215 N.C. App. 268 (2011), for the proposition that "[r]eliance is not reasonable where the plaintiff could have discovered the truth of the matter through reasonable diligence but failed to investigate." (Appellant's Br. (DE 29) at 38 (quoting Cobb, 215 N.C. App. at 277)). However, the bankruptcy court found that "Brooks reasonably investigated" Sanders's misrepresentations. (Bankr. Order (DE 1-2) at 18). Because Brooks did not "fail[] to investigate," appellant's reliance on Cobb is inapposite. Cobb. 215 N.C. App. at 277.

Where the bankruptcy court's finding "is plausible in light of the record viewed in its entirety," it was not clear error for the bankruptcy court to find that Brooks reasonably relied on

9

appellant's fraudulent misrepresentations.  Anderson, 470 U.S. at 574.

  2.  Existence of a Debt

Appellant next argues that it was error for the bankruptcy court to find that a debt for fraud exists because no court has properly analyzed his liability for fraud under North Carolina law.  The court disagrees.

The Bankruptcy Code defines a "debt" as liability on a claim.  11 U.S.C. § 101(10).  "[W]hen the Bankruptcy Code uses the word 'claim'—which the Code itself defines as a 'right to payment'—it is usually referring to a right to payment recognized under state law." Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 451 (2007) (quoting 11 U.S.C. § 101(5)(A)).  Thus, a debt for fraud owed by appellant exists if appellant is liable for fraud under North Carolina law.

In North Carolina, liability for fraud requires: "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party," and "any reliance on the allegedly false representations must be reasonable." Forbis, 361 N.C. at 526-27.

In its August 31, 2023, memorandum opinion, the bankruptcy court concluded appellees had established the following elements of common law fraud: "(1) false representation, (2) knowledge that the representation was false, (3) intent to deceive, (4) justifiable reliance on the representation, and (5) proximate cause of damages."  (Aug. 31, 2023, order at 15 (quoting Rountree v. Nunnery, 478 F.3d 215, 218 (4th Cir. 2007)).  The bankruptcy court's conclusion "that Sanders made material false representations, with intent to deceive, which deceived [appellees], resulting in damages" was "not disturbed" by this court's August 6, 2024, order. Sanders, 2024 WL 4164163, at *8.  Thus, on remand the bankruptcy court was instructed to "resolve whether

[appellees] reasonably relied upon the misrepresentations under North Carolina law, and causation only insofar as it intersects with Brooks's statutory standing." Id.

As discussed above, on remand the bankruptcy court properly found that Brooks's reliance was reasonable. Thus, where the remaining elements of fraud had been affirmed by this court, the bankruptcy court correctly concluded that appellees established appellant's liability on Brooks's claim of fraud under North Carolina law. Where appellant is liable for fraud under state law, a valid debt for fraud exists, and the bankruptcy court did not err in so concluding. See 11 U.S.C. § 101(10).

Although not an enumerated issue, appellant urges an error of discrepancy because the bankruptcy court's "[o]rder on [r]emand states that only [] Brooks is the holder of the debt, but the [j]udgment states that both First Recovery and Brooks are the holder of the debt." (Appellant's Br. (DE 29) at 29 (emphasis in original)).

As discussed above, the only elements of appellees' fraud claim remaining for the bankruptcy court to analyze on remand were "whether [appellees] reasonably relied upon the misrepresentations under North Carolina law, and causation only insofar as it intersects with Brooks's statutory standing." Sanders, 2024 WL 4164163, at *8. The bankruptcy court did not expressly state that First Recovery, separate from Brooks, reasonably relied on appellant's fraudulent misrepresentations. (See Bankr. Order (DE 1-2) at 16-18). However, the bankruptcy court's conclusion that a debt is owed to First Recovery nevertheless is supported by the bankruptcy court's findings. In particular, the bankruptcy court found that in response to Brooks's questions about assignability of the bond, contracts, and leases, appellant "and his agents provided plausible responses that appeared reasonable and did not create any basis for Plaintiffs [i.e. appellees] to investigate further." (Id. at 17 (emphasis added)). Where First Recovery acted solely

through Brooks, as its "managing member," (id. at 11), it had no basis to investigate further, and its reliance was reasonable. See Olivetti, 319 N.C. at 544; Woodson v. Rowland, 329 N.C. 330, 344 (1991) ("A corporation can act only through its agents, which include its corporate officers."). Thus, the bankruptcy court did not err in concluding, on the basis of its own factual findings, that appellant is "indebted to [First Recovery] and [Brooks] on the basis of common law fraud." (Bankr. J. (DE 1-1) ¶ 1).

3. Brooks as a Creditor

Appellant next argues the bankruptcy court erred in determining that Brooks has statutory standing as a creditor on the debt for fraud within the meaning of the bankruptcy code.[3]

A complaint to determine dischargeability of a debt under § 523(a)(2) must be brought by "the creditor to whom such debt is owed." 11 U.S.C. § 523(c)(1). As used in the bankruptcy code, a creditor is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). A claim is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Id. § 101(5)(A). "By enacting this definition, Congress gave the broadest possible definition to the term 'claim' in order to ensure that all legal obligations of the debtor, no matter how remote or contingent, would be dealt with in the bankruptcy case." In re Cybermech, Inc., 13 F.3d 818, 821 (4th Cir. 1994) (emphasis omitted).

On remand, the bankruptcy court determined Brooks is entitled to creditor status on the

---

[3] Contrary to appellant's assertion, statutory standing does not implicate subject matter jurisdiction. See Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 128 n.4 (2014); MSP Recovery Claims, Series LLC v. Lundbeck LLC, 130 F.4th 91, 102 n.5 (4th Cir. 2025). To the extent appellant asks this court to reconsider its earlier determination that Brooks established Article III standing, the court declines to do so. See Sanders, 2024 WL 4164163, at *4.

debt for fraud because appellant caused Brooks to incur actual individual damages in the form of liability on the SBA loan. (Bankr. Order (DE 1-2) at 20). Documents entered into the bankruptcy record by stipulation show the SBA and the United States Department of the Treasury have been actively attempting to collect the SBA loan balance from Brooks, substantiating the existence of Brooks's damages. (See Adversary Proceeding (Doc. 173, 174, 175)). Additionally, "[h]ad [Sanders] been forthcoming and not committed fraud, First Recovery and [] Brooks, as guarantor, would not be indebted to Yadkin Bank and the SBA on the SBA loan." (Bankr. Order (DE 1-2) at 19). Essentially, appellant's fraudulent misrepresentations induced both the sale from appellant to First Recovery and the loan from Yadkin Bank to First Recovery and guaranteed by Brooks. Thus, the bankruptcy court found that appellant caused both appellees to suffer damages in entering the loan agreement: First Recovery as borrower and Brooks as guarantor.

Appellant's argument that Brooks cannot qualify as a creditor because he was not a party to the agreement whereby the business was sold is inapposite. The bankruptcy court determined appellant owes Brooks a debt for fraud, a tort. Thus, it is of no import that Brooks is not a party to the sale agreement.

4.      Application of § 523(a)(2)(A)

Finally, appellant argues the bankruptcy court erred in finding that his debt to appellees is nondischargeable under 11 U.S.C. § 523(a)(2)(A). This court earlier "concluded that the disputed debt, if it exists, is nondischargeable under § 523(a)(2)(A)." Sanders, 2024 WL 4164163, at *10. "A court has the power to revisit prior decisions . . . in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988). Where appellant has not demonstrated such

13

"extraordinary circumstances," the court declines the request to revisit its prior decision regarding nondischargeability. Id.

## CONCLUSION

Based on the foregoing, the judgment of the bankruptcy court is AFFIRMED.

SO ORDERED, this the 16th day of October, 2025.

_____
LOUISE W. FLANAGAN
United States District Judge